```
          IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF KANSAS
```

**HOWARD HINES,**

                **Plaintiff,**

       v.                                                           **CASE NO. 20-3018-SAC**

**CORIZON HEALTH, INC., et al.,**

                **Defendants.**

<u>**MEMORANDUM AND ORDER**</u>

This matter is a civil rights action filed under 42 U.S.C. § 1983. Plaintiff proceeds pro se and in forma pauperis. After conducting an initial screening of the complaint, the court directed officials at the Lansing Correctional Facility (LCF) to prepare a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). The report was filed on July 27, 2021. Plaintiff did not file a response.

**Nature of the complaint**

Plaintiff suffers from ulcerative colitis (UC) and claims he has received constitutionally inadequate medical care for that condition. He seeks damages and the "best possible Health Care Service" to treat him.

**Factual background**

Plaintiff has been incarcerated at the LCF since October 2014.

On January 17, 2018, he advised staff during a sick call nurse visit that the medication Flagyl, an antibiotic, did not seem to work and that his problem was worse. He stated that he had not received vitamins he was told would be ordered and that he needed to see a specialist in gastrointestinal (GI) care. He told the nurse that he had used Prednisone, a steroid, in the past and found it helped.

The nurse reviewed plaintiff's medical records and found he had been seen on multiple occasions by various providers who had tried different treatment options. The records included an order for Prednisone for 7 days with documentation that it was not effective. The records also showed that a previous course of Flagyl had been effective for plaintiff.

Plaintiff was advised that the reason he was given Flagyl was the documented history showing it had been helpful in the past. The medical record also showed that a repeat request for a GI consultation had been approved but had not yet been scheduled. A verbal order was received to allow plaintiff to continue receiving Flagyl and prenatal vitamins for 90 days.

In January 2018, plaintiff filed a grievance asserting that the medical treatment he had received was below any standard level of care and asking to see a specialist. The unit team's response advised that plaintiff had not first sought informal resolution as required by the grievance procedure. Plaintiff sought review by the facility warden, who agreed with the unit team's finding and also stated that medical staff reported that plaintiff was scheduled for a colonoscopy with a GI specialist.

Plaintiff then appealed to the Secretary of Corrections. That response reflected that KDOC Medical Health Authorities reviewed plaintiff's record and stated, in part:

> On 5/4/17 the offender was noted to have 5-8 loose stools daily. The offender was scheduled for a colonoscopy on 7/14/2017. The offender reportedly became ill and the colonoscopy was deferred and rescheduled for 8/18/2017. Per the site response, the offender refused the appointment for the colonoscopy on that date.

The reviewer also found that plaintiff was approved to see a GI

specialist for a colonoscopy and recommended that he receive more aggressive treatment.

On February 2, 2018, plaintiff sought antibiotics from the LCF clinic for a virus. He spoke to the nurse because he had stated earlier that he wanted a medical appointment but did not want a colonoscopy. They agreed to set the GI appointment, and the nurse explained to plaintiff that because antibiotics may have an adverse effect on the GI tract, the better course would be to refrain from additional antibiotics until the specialist evaluated his condition.

On February 26, 2018, an appointment was scheduled for March 6, 2018, for a GI appointment. Plaintiff attended that appointment with Dr. Propeck, a gastroenterologist, who recommended a colonoscopy. Plaintiff underwent that procedure on March 30, 2018, and was found to have non-bleeding internal hemorrhoids, small-mouthed diverticula in the transverse colon, and an area of bleeding ulcerated mucosa. A biopsy of that area yielded a diagnosis of chronic ulcerative colitis of moderate to marked severity.

Dr. Propeck recommended that plaintiff resume his previous diet, continue to take his current medications, and undergo another colonoscopy in five years. He also recommended Prednisone and Apriso, a non-steroidal anti-inflammatory.

On April 4, 2018, plaintiff attended a chronic care visit at LCF. The nurse reviewed his colonoscopy results, a Prednisone taper was begun, and a formulary exception was submitted for Apriso.

On May 16, 2018, plaintiff attended a medical call for an

unrelated complaint and also attended follow up visits on May 21 and May 23. He did not report that he was not receiving all of the prescribed medications for his UC.

On July 3, 2018, a nurse submitted a renewal formulary exception request for Apriso. The request was approved on July 5.

On September 26, 2018, plaintiff attended a chronic care visit. At that time, he told the physician, Dr. Williams, that he had not received Apriso since it was prescribed in July 2018. He also reported that he had soft stools without abdominal pain and requested a return to a high fiber diet. Based on the information provided, plaintiff's UC was found to be stable and under a good degree of control. Because plaintiff had not yet received any Apriso, Dr. Williams stated he did not see any reason to re-request it unless plaintiff's symptoms worsened. Dr. Williams discontinued the prescription for Protonix but renewed plaintiff's high fiber diet. In response to a formulary exception request for Apriso, the pharmacist consulted with Dr. Williams, who then discontinued that prescription.

On October 22, 2018, plaintiff went to the LCF clinic to inquire about the prescription for Protonix. The nurse advised that Dr. Williams had discontinued it.

On April 9, 2019, plaintiff saw Dr. Williams for his annual health assessment. At that time, the symptoms of his UC were found to be stable with chronic soft stools. Dr. Williams' notes state "Last year, patient had 3 month FE approval for Apriso … that never came through pharmacy, and at that time no benefit was seen for re-requesting the

medication unless symptoms were to worsen over time. Patient has done well on High Fiber diet."

On June 25, 2019, plaintiff came to the clinic with a complaint that his UC was worsening and seeking the new medication he had never received. An appointment was scheduled, and on July 8, 2019, he saw a nurse for follow up.

At that appointment, plaintiff reported his UC was flaring up and that he was suffering from diarrhea, constipation, and blood in his stool. He was told that a request for Apriso had been submitted on the day before and should be available within the next day.

On September 26, 2019, plaintiff was seen at the clinic and reported that the Apriso was not helping. He asked to be seen by a gastroenterologist. A nurse ordered a dose of Imodium and referred plaintiff to a health care provider who could request that plaintiff be seen by a gastroenterologist.

On September 30, 2019, plaintiff again came to the clinic. He reported that he had taken mesalamine, a nonsteroidal anti-inflammatory used to treat UC, since July 2019 but still had over 20 stools a day with blood frequently in the stool. He also reported that he had constant abdominal pain and flatulence. A Prednisone taper was prescribed and plaintiff was directed to continue taking mesalamine. He was given 3 occult stool cards to prepare and return for testing. A request for a GI consult and treatment by an outside provider were submitted.

On October 14, 2019, plaintiff attended the clinic for a chronic

care visit. The nurse noted plaintiff was on a Prednisone taper and that a prescription for Lialda, a brand name for mesalamine, was started on September 30. However, plaintiff stated he had not received that prescription, and staff determined that the medication had not yet been delivered to the clinic pharmacy. The request for a GI consult had been approved but not yet scheduled.

On October 30, 2019, plaintiff was seen for a health assessment at the LCF. Plaintiff reported that his condition had improved slightly with the addition of Lialda. He stated he also was taking Colace, a stool softener. Plaintiff was advised to discontinue that medication and otherwise to continue with his current medications. He declined a course of Prednisone. The nurse advised plaintiff that he would need to see a GI if his condition did not improve.

On November 18, 2019, plaintiff reported that his medication for GI issues was not working. He was seen by a nurse on November 25, and described general improvement with the use of Lialda but lingering difficulty. He was prescribed Imodium and given Diamode, a diarrhea medication.

On January 7, 2020, plaintiff saw the nurse for follow up. At that visit, he complained that LCF was not doing anything to help him with his GI issues and that he could not understand why he was not being sent to an outside specialist. Plaintiff was advised to continue taking the Lialda and was provided another round of Imodium. In addition, a request for a consultation with a GI provider was made.

In January 2020, plaintiff wrote to the Director of Health Care

concerning his medical complaints. The clinical reviewer prepared a summary of plaintiff's history of GI complaints and diagnoses. The reviewer noted that plaintiff was to be seen by a provider on January 7 and stated that if he continued to have multiple stools per day, he should be scheduled with a GI specialist.

In late February 2020, plaintiff reported at the LCF clinic that his UC was worse. The nurse stated that he would be referred to a provider.

On March 11, 2020, plaintiff again visited the clinic and stated he wanted to see a gastroenterologist. In response to his complaints of multiple daily episodes of diarrhea, Dr. Williams was contacted and gave orders including intravenous medication.

The medical records show that plaintiff continued to receive Lialda but do not reflect any additional complaints or treatment related to GI issues.

**Discussion**

Under *Martinez v. Aaron*, a district court may "direct prison officials to respond in writing to the [prisoner plaintiff's] various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports. The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).

However, the court may not use a *Martinez* report to resolve disputed issues of fact when the report's findings are in conflict

with the pleadings or affidavits. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

Plaintiff seeks relief under the Eighth Amendment for allegedly unconstitutional medical care. To state a claim, he must allege that the defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This analysis requires "a two-pronged inquiry, comprised of an objective and subjective component." *Self v. Crum*, 439 F.3d 1227, 1330 (10th Cir. 2006). The objective component requires "that the pain or deprivation be sufficiently serious," and the subjective component requires that the defendant act "with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991). The U.S. Supreme Court has explained that the subjective component is met only when the defendant official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Supreme Court has cautioned that this standard requires more than negligence. *See Estelle*, 429 U.S. at 106 (stating "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment" and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Accordingly, when a doctor acts in the exercise of medical

judgment, such as decisions whether to consult a specialist or offer additional medical testing, the plaintiff must show "an extraordinary degree of neglect." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Finally, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

It is apparent from the complaint, the *Martinez* report, and the medical records that plaintiff suffers from a serious medical condition that is both painful and difficult to manage.

The record also shows that medical personnel at the LCF provided plaintiff with an ongoing course of treatment for UC and related concerns. Plaintiff received treatment including referrals to outside specialists, procedures, medication, a special diet, and vitamins. Although not all of the measures yielded positive results, and there were errors in the delivery of prescribed medication, nothing in the record supports a finding that any defendant acted with deliberate indifference to plaintiff's medical needs. Instead, the record shows that the medical decisions concerning the treatment of plaintiff's UC were made in the exercise of medical judgment. In sum, the court finds the record does not show deliberate indifference and will dismiss this matter for failure to state a claim for relief.

IT IS, THEREFORE, BY THE COURT ORDERED this matter is dismissed for failure to state a claim for relief.

DATED: This 10th day of February, 2022, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge